[No. 10790. Department Two. February 18, 1913.]

# H. R. Downie, *Appellant*, v. Charles G. Savage *et al.*, *Respondents.*[1]

PARTNERSHIP—EXISTENCE OF RELATION—EVIDENCE — SUFFICIENCY. A finding that one of two brothers, employed by the other, was not a partner in the business nor liable as a partner by reason of having held himself out as a partner, is sustained, where although his brother did business under the name of S. Brothers (having bought out a former partnership business of a deceased brother, conducted in that name), and used letter-heads and received mail addressed in such firm name, and although many persons considered him a partner from such circumstances and the conduct of his brother, he himself had never assumed to act as a partner nor done or said anything to create the impression or mislead any person.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered May 29, 1912, upon findings in favor of the defendants, in an action on contract, denying the liability of the defendants as partners, after a trial to the court. Affirmed.

*Bates, Peer & Peterson*, for appellant.

Morris, J.—It is sought in this action to establish a liability against respondents as partners. The court below held that respondents were not partners, and that judgment should go against Howard P. Savage alone.

There is no evidence from which it can be held that, as between themselves, the respondents, who were brothers, were partners. In fact, it clearly appears that they were not. The main contention of appellant is that Charles G. Savage held himself out as a partner, and is therefore liable as such. It is now too late to question the rule that, irrespective of what is the true relation as between themselves, persons can so hold themselves out as partners in a particular business and thereby induce others to deal with them as such

[1]Reported in 129 Pac. 1096.

and give credit on the faith of such a relation, that as to
such third persons the relation will be held to exist.   The
rule that fixes such a liability, when in reality the relation
does not exist, is a familiar illustration of the general prin-
ciple of estoppel when acted upon by another.   While there
is ample evidence in the record to establish the fact that many
persons, including appellant and other creditors who have
assigned their claims to him, regarded and generally under-
stood the brothers were partners, we can find no instance in
the record where any holding out of the existence of such a
relation was done by Charles G. Savage, or with his assent,
express or implied.   One witness, not interested in any claim
in suit, testifies that, on one occasion, Howard P. Savage
introduced Charles G. Savage to him as his partner.   This
is denied by each of the brothers, and as the court finds
against it, we accept its findings, as we cannot say that the
evidence so preponderates in appellant's favor as to require
a finding in his favor upon this point.   It also appears that,
at one time, Charles G. Savage and a third brother were in
partnership as Savage Brothers.   The third brother died,
and Howard P. Savage purchased the business and its assets
from Charles G. and the administrator of the deceased
brother.   In doing so, he acquired letter-heads, envelopes, and
blank checks upon which appeared the name "Savage Broth-
ers," with the picture of two savages.   Howard P. then
engaged in a different business and adopted the business name
or style of "Savage Brothers."   In paying claims in the
business in question, he used these checks, adding to the
printed signature, "By Howard P. Savage."   It may also
be found that, in ordering supplies, he directed them to be
sent to "Savage Brothers."   But it nowhere appears that
Charles G. Savage at any time gave any such directions, or
had any knowledge of any inference upon the part of any
person that he was regarded as a partner.

The business out of which these debts grew was a small
mill business at Mineral, in which Charles G. Savage worked

as head sawyer. He does not appear to have had any charge or supervision of the business such as one would expect from a proprietor. All the orders and directions came from Howard P. It also appears that mail came to the camp addressed to "Savage Brothers," and that Charles G. Savage knew of such fact, and that he also knew that supplies came to the camp with a like direction. From this it is urged that it must be held there was an implied if not express holding out. It does not appear to us, however, that this can be taken for anything more than a consent on the part of Charles G. that Howard P. might do business under the name and style of "Savage Brothers," which fact alone we do not think is sufficient to indicate that Charles G. was a partner, until he did something or said something that would indicate to others he was to be so regarded, especially in view of the undisputed fact that, at the mill and in the camp where these creditors were employed, Charles G. never assumed to act as a proprietor, gave orders, nor took charge as such. Nor did any of these creditors ever address him as a partner, make inquiries of him as such; nor, when they failed to receive their wages and thus knew of the failure of the business, did they make any demand of him for payment, nor in any way treat him as having any responsibility in the matter. To all intents and purposes, notwithstanding they now say they regarded him as a partner, they then did nothing nor said anything that would indicate such an understanding on their part; nor does their then conduct show other than that he was regarded as an employee.

In order to work the estoppel upon which the rule of liability as a partner to third persons exists, it must appear that the one upon whom the liability is sought to be fixed does something which induces other persons to act and rely thereon to their detriment. It is not what Howard P. Savage might have done, nor what others might have thought, but what Charles G. Savage himself has done, what he himself has said, or the manner in which he has acted that has led

others to act under the belief or impression created by him that he was a partner. Such facts do not here exist. The addressing of the mail or the direction of the supplies alone is not sufficient. Nor the fact that his name did not appear in the time book. The names of other employees likewise failed to appear therein. Nor the fact that no charge was made against him for tobacco he obtained at the camp commissary maintained for the use and benefit of the men. All these facts were subsequent to the employment of appellant and his assignors, and they therefore cannot be said to have induced them to enter the employment upon the faith of anything Charles G. Savage may have done, nor to have given credit upon the belief induced by what he may have said or done that responsibility for the payment of their wages to any extent rested upon him. Certainly nothing occurring subsequent to the formation of a relation can be said to have been a controlling or inducing cause in the creation of that relation. And it is upon the misleading of appellant and his assignors to their prejudice, either positively or tacitly, by Charles G. himself when the relation of employer and employee began and credit was given, that alone must be determined the estoppel that fixes liability.

We are therefore of the opinion that there is no reason in fact or law which establishes error in the judgment, and the same is affirmed.

CROW, C. J., ELLIS, MAIN, and FULLERTON, JJ., concur.