[No. 14213.  Department One.  January 30, 1918.]

RICHARDTON ROLLER MILLS, *Respondent*, v. H. J. MILLER *et al., Appellants.*[1]

SALES—IMPLIED CONTRACT—APPROPRIATION BY AGENT.  Where flour consigned for sale on commissions, was received by the consignee who sold it and failed to furnish invoices or report the sales as agreed, there was such an appropriation as to entitle the consignor to treat the transaction as a sale and recover the price.

PARTNERSHIP — EXISTENCE OF RELATION — EVIDENCE—SUFFICIENCY. The evidence is sufficient to establish that one of the partners became a member prior to a sale to the firm, where two witnesses testified to his oral admissions to that effect and he did not testify with any degree of certainty as to when he became a member.

SALES—CONTRACT—EVIDENCE—SUFFICIENCY.  An enforceable sale of 2,000 barrels of flour is not established by telegrams and letters showing only an offer specifying prices per barrel on different grades, an acceptance thereof and booking of the order without specifying quantities, and a subsequent raise in the price by the seller to which the buyer refused to agree, especially where, in further negotiations for other shipments, each party claimed a different interpretation of the correspondence.

Appeal from a judgment of the superior court for King county, French, J., entered November 1, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract.  Reversed.

*Carroll A. Gordon* and *Chas. Ethelbert Claypool*, for appellants.

*Brightman & Tennant* (*J. Arthur Lind*, of counsel), for respondent.

PARKER, J.—The plaintiff, Richardton Roller Mills, a North Dakota corporation, seeks recovery from the defendants, Miller and DeWolf, as copartners, doing business under the name of H. J. Miller Company, of Seattle, upon two causes of action; (1) for an alleged balance of $1,043.70,

[1]Reported in 170 Pac. 357.

due upon the purchase price of a car load of flour sold and shipped by plaintiff to the defendants on September 13, 1915; and (2) for damages in the sum of $1,172.50, alleged to have resulted to plaintiff from the failure of the defendants to take and pay for 2,000 barrels of flour in compliance with a contract of purchase made by the defendants with the plaintiff in January, 1916. Trial in the superior court for King county sitting with a jury resulted in verdict and judgment in favor of the plaintiff for the full amount claimed upon both causes of action, from which the defendants have appealed to this court.

The contentions here made in appellants' behalf are only that the evidence does not support the verdict and judgment in the following particulars: As to the first cause of action, it is argued in behalf of both appellants that the evidence is insufficient to support recovery against either of them because there was no contract of purchase of the flour, but that the flour was held and sold for respondent upon commission. It is separately argued in behalf of appellant DeWolf that the evidence is insufficient to support recovery as against him, in any event, because he was not a partner with appellant Miller at the time in question and never assumed liability for the payment of the flour, either as purchaser or otherwise. As to the second cause of action, it is argued in behalf of both appellants that the evidence is insufficient to support recovery, in that there was no contract of purchase as claimed by respondent, and hence no breach of any contract. These contentions were timely made in the superior court by appropriate motions. We proceed to notice them in this order.

On May 13, 1915, appellant Miller entered into a commission contract with respondent by which he was to become sales agent for respondent in the state of Washington for its flour. He was to receive ten cents per barrel upon sales of respondent's flour he might make in this territory. The terms of the contract seemed to contemplate the billing and

shipping of the flour direct from respondent to purchasers found by Miller. Soon thereafter the parties began to discuss by correspondence the advisability of having flour shipped direct to Miller at Seattle so that he could sell it in quantities of less than car load lots, with the understanding that Miller would forward to respondent invoices of such sales as made. By this correspondence there were also some negotiations looking to Miller's buying the flour from respondent outright instead of selling it upon commission. There is room for arguing that Miller, in any event, guaranteed the payment for sales made by him from flour which he might receive and hold in storage in Seattle for respondent. Some cars of flour were shipped to and received by Miller and paid for by him apparently without reference to the particular amount of sales thereof made by him.

About September 1, 1915, while the business relationship between Miller and respondent was in this somewhat uncertain condition, we will assume for the present that appellant DeWolf became his partner in the business. On September 13, 1915, in response to an order therefor, respondent billed and shipped to "H. J. Miller Co.," at Seattle, a car of assorted flour at the total price of $1,962.50. While this billing of the car of flour indicated the sale of it to appellants by respondent, it probably was not then so intended by either of the parties, but it was, in any event, intended that the flour should be sold by appellants, that they should send invoices of sales thereof to respondent showing to whom it was sold, and remit as they collected for such sales from time to time, which collections and remittances were to be made within thirty days following each sale. During October following this shipment, respondent repeatedly made demands upon appellants, both by letters and telegrams, for payment for the flour and for invoices of the sale thereof. No invoices of any sales of this flour were ever furnished to respondent, though apparently sales were made thereof by appellant. Payments upon this shipment, however, were

thereafter made by appellants to respondent amounting to $918.80, leaving $1,043.70 of the invoice price thereof unpaid, which respondent claims is owing it as for the purchase price thereof, and claiming the right to treat the transaction as a sale, though it may not have been intended as such when the shipment was made. We think that the jury could well have believed from the evidence that this car of flour was shipped to appellants, that they received it, and that they sold it and failed to furnish invoices or report the sale thereof as agreed. This would be such an appropriation of the flour as would entitle respondent to treat the transaction as a sale, though conceding that it was not intended as a sale when the shipment was made. It seems quite clear to us that the facts, as the jury might well believe them from the evidence, support the verdict and judgment against appellants, in so far as the first cause of action is concerned.

Did appellant DeWolf become liable as a partner with Miller as a purchaser of the car of flour shipped to H. J. Miller & Company on September 13, 1915? There is evidence in the record which, if believed by the jury, it seems to us renders it quite certain that he became a partner in the business prior to September 13, 1915. Two witnesses testified to his making oral admissions to that effect. Besides, he did not testify upon the stand with any degree of certainty as to just when he became such partner, though he concedes he was such partner soon after that date. The exact date upon which he became such partner was certainly within his own knowledge. No other evidence was introduced upon that subject. Certainly the jury was fully warranted in believing that he became a partner, and was therefore liable as such, prior to September 13, 1915.

The question of appellants' liability to answer in damages claimed by respondent in its second cause of action is a somewhat more difficult problem. We think we may safely assume that, at the time of the transaction in January, 1916, relied upon as respondent's second cause of action, appellants

were in no event acting as agents for respondent, and that appellants would be liable, if at all, for the breach of a contract for the purchase of the flour. Whatever contract was entered into between the parties at that time was evidenced only by the following telegrams and letter. On January 11, 1916, appellants telegraphed respondent as follows:

"Will handle two thousand barrels January, February, March, cover us price must be low as we are filling contracts."

Thereafter, on the same day, respondent telegraphed appellants as follows:

"Offer two thousand barrels flour assorted grades six forty five Never Fails; six fifteen Dacotah Chief; five ninety Gem; and five forty five Pioneer, all packed halves cotton basis Seattle carloads terms arrival draft, offer subject to change without notice. Shipments January, February and March. Markets erratic."

The prices named in this telegram, it is conceded, mean per barrel, and the names following the prices in the telegram mean the different kinds of flour. On January 13, appellants telegraphed respondent as follows:

"Book us two thousand barrels Jan. Feb. and Mar. shipments expected lower quotations."

Thereafter, on the same day, respondent telegraphed appellants as follows:

"Have booked two thousand barrels assorted grades at basis Never Fails six sixty five, Chief six .thirty five, Gem six ten and Pioneer five sixty five all packed halves cotton shipments January, February and March terms arrival draft. Made price lowest possible, market has been continually advancing."

Thereafter, on the same day, respondent telegraphed appellants as follows: "Market up twenty cents barrel all grades." Thereafter on January 15, appellants wrote respondent as follows:

"Regarding the wires confirming booking of 2,000 barrels

of flour, I wish now to state that we will not pay over $6.15 as that is all the market is up to date.

"If you care to book on this basis you can, but otherwise we do not care to purchase at that price irrespective of what your telegrams state."

These telegrams and letter embody all that passed between respondent and appellants evidencing what counsel for respondent claim was a contract then made for the purchase of 2,000 barrels of flour by appellants from respondent to be delivered in January, February and March. If the contract claimed to be so evidenced had been executed by the shipment and receipt of flour answering to some one or more of the descriptions of the kind mentioned in the telegrams, it could probably be said that such a shipment and receipt of the flour would have rendered appellants liable for the purchase price thereof according to the prices named in respondent's second telegram of January 13, above quoted, in so far as the quantities of each kind were shipped and so received; but to say that these telegrams and letter evidence with sufficient certainty a contract for the breach of which damages may be recovered by either of the parties as against the other is quite a different matter. These telegrams and letter do not tell us how much of each particular kind of flour was to be purchased, and this manifestly is an important matter, in view of the fact of the different prices being quoted for the different kinds of flour. Besides it is plain that respondent did not intend to consummate a sale at the prices named in its telegram of January 11, though appellants' telegram of January 13 seems to evidence a willingness to purchase the flour at the prices named in respondent's telegram of January 11. The trouble with respondent's position is that it is now seeking to recover upon the breach of a contract at prices named in its telegram of January 13, which are higher than its former named prices and which appellants never agreed to. Indeed, in their letter of January 15, appellants expressly declined to agree to such increased prices. Plainly

we think the minds of the parties never met in the making of the alleged sale contract for the breach of which respondent seeks recovery. It seems to us that, as an unexecuted contract, these telegrams and letter wholly fail to evidence with sufficient certainty a contract for which damages may be recovered for the violation thereof by either of these parties as against the other, and to allow the jury to so find is merely to permit speculation upon the question of the intention of the parties. It is true that, some time thereafter, appellants did order of respondent 305 barrels of flour which were shipped to them by it and paid for by appellants at $6.65 per barrel. But, so far as the evidence in this record is concerned, it is a matter of speculation as to whether that sale had reference to what the parties considered a binding contract as evidenced by the telegrams and letter above quoted. It is also true that thereafter appellants requested the shipment of 1,635 barrels of flour from respondent for the purpose of placing the same in storage at Seattle to be bought and paid for by them as they needed it. This respondent promptly declined to do, and thereafter there was some controversy between the parties as to what the obligations of each to the other were growing out of the telegrams and letter above quoted. All of this only argues that each was claiming a different interpretation of these telegrams and letter as a contract for the sale of 2,000 barrels of flour. We are of the opinion that the learned judge erred in refusing to sustain appellants' challenge to the sufficiency of the evidence, in so far as the second cause of action alleged in appellants' complaint is concerned.

The judgment is reversed and set aside, and the cause remanded to the superior court with directions to enter a judgment awarding recovery against appellants by respondent upon its first cause of action only, to wit, for the sum of $1,043.70, the balance due upon the car of flour shipped to appellants on September 13, 1915, together with legal in-

terest from October 13, 1915, that being the date when the purchase price of the flour became due. Appellants may recover their costs in this court.

ELLIS, C. J., FULLERTON, WEBSTER, and MAIN, JJ., concur.