[No. 25053. Department Two. August 2, 1934.]

J. I. LOWENSTEIN, *Appellant*, v. LOUIS WHITELAW *et al.*,
*Respondents.*[1]

*Benjamin M. Levine* and *Philip Tindall*, for appellant.

*Ballinger, Clark, Mathewson & Force*, for respondents.

BLAKE, J.—Plaintiff brought this action to recover from defendant $1,935, the balance due on certain loans made by plaintiff to one Sam Rothstein. The theory of the action is that, at the times the loans were made to Rothstein, the latter and the defendant were partners, and that the loans were made for the benefit of the partnership business. At the close of plaintiff's case, the court sustained a challenge to the sufficiency of the

[1]Reported in 34 P. (2d) 1108.

evidence to establish a partnership between defendant and Rothstein, and entered judgment dismissing the action. Plaintiff appeals.

The loans in question were made to Rothstein in the latter half of 1931 and in January, 1932. Appellant had known Rothstein for many years as a diamond salesman, working for respondent up and down the Pacific coast. Respondent was a diamond merchant, ·r broker, living in New York, maintaining offices there and in Los Angeles. Appellant first met respondent in 1931, in New York, where, during a visit of six weeks, he gleaned from respondent, in conversations at dinner tables and over card tables, the following information: That Rothstein "was a slick trader;" that "they" had made a lot of money together, but that "they" were going to take some heavy losses; that Rothstein was "way behind" with respondent; that Rothstein owed respondent a lot of money.

What was meant by referring to Rothstein as a "slick trader," was that he knew the value of diamonds, and was able to trade them off to the disadvantage of the one with whom he was dealing. One favorite method of operation was to pawn diamonds for more than they were worth and not redeem them. Rothstein had full power to sell, trade, or pawn the merchandise. It is not intimated, however, that he had any interest in the merchandise he handled for respondent, or that he contributed to the capital upon which respondent operated. Nor does it appear how he was compensated, although it is inferable that he shared in the profits of the transactions he made. Rothstein reported each sale, trade, or pledge to respondent's New York office as a separate transaction.

On this evidence, appellant asks us to find as a fact that there was an agreement between respondent

and Rothstein to share profits and losses, and to draw the conclusion therefrom that a partnership existed between them. We think the evidence does not justify any such finding or conclusion. Appellant himself drew no such inference when he made the loans, as will appear from an examination of the circumstances under which the largest loan to Rothstein was made. October 2, 1931, Rothstein wired to appellant as follows:

"Joe Lowenstein,
"c/o Rothstein Bros.,
"510 Ligget Bldg.,
"Seattle, Wash.

"At Alexandria Hotel here. Am leaving for Seattle next week. Can you come down here if I pay all your expenses get out that stuff I have here. It takes about six thousand. Will pay you well and we can turn it in Frisco and Seattle quick. Answer. Best regards.
"Sam Rothstein."

October 3d, appellant answered by wire:

"Sam Rothstein,
"Alexandria Hotel,
"Los Angeles, Calif.

"If you can show me you have the right to dispose of goods without getting jammed will come and take goods out, me to control same, you to pay my expenses. Would not consider coming unless you produce proper authority for you to take goods out if not trouble for you and me.                    Joe Lowenstein."

October 5th, appellant received the following telegram:

"Joe Lowenstein,
"c/o Rothstein Bros.,
"Liggett Bldg.,
"Seattle, Wash.

"Received wire from Sam that you have understanding with him reference liquidating some merchandise that he has tied up at Los Angeles, that you are willing to go there helping him liquidating same,

and you are awaiting word from us. You may go there and help Sam straighten this matter out for him.

"Whitelaw Bros."

Appellant thereupon went to Los Angeles, where he advanced Rothstein $2,820 to redeem some jewelry the latter had pledged. Appellant kept the jewelry as a pledge for the loan. The jewelry was later sold for more than that amount. Appellant claims no loss on that particular transaction. We think, from the way this transaction was initiated and handled, that appellant himself had not then drawn any inference, from his conversations with respondent in New York, that the latter and Rothstein were partners. The telegrams clearly infer that appellant sought and respondent gave only confirmation of Rothstein's authority to deal with respondent's property.

But in addition to that, appellant testified that respondent was not advised of any of the other loans made to Rothstein until appellant demanded payment in the spring of 1932. Respondent thereupon very promptly denied liability. Furthermore, appellant testified that he loaned the money "out of friendship for Sam;" that he looked to the latter for payment, and "entirely" to the diamonds for protection on the loans.

One is liable to third persons as a partner only when a partnership actually exists, or when, by his conduct, he is estopped from denying it. In his work on Partnership (8th ed.), p. 62, after reviewing the leading cases on the subject, Mr. Lindley says:

"In fact, the strong tendency of the above decisions is to establish the doctrine that no person who does not hold himself out as a partner is liable to third persons for the acts of persons whose profits he shares, unless he and they are really partners *inter se,* or unless they are his agents; that this is now the law cannot be

doubted after the decision of the House of Lords in *Gosling v. Gaskell* [(1897) A. C. 75]."

This rule has been adopted by this court. *Lansdown v. Huff*, 103 Wash. 277, 174 Pac. 21.

The burden of proving the existence of a partnership, or facts constituting estoppel, is on the person asserting it. Mr. Lindley, at p. 103, says:

"When it is sought to make a person liable on the ground that he represented himself or knowingly suffered himself to be represented as a partner, evidence must be adduced of his acts, or of what has been done by other people with his knowledge or with his consent, and the plaintiff must prove that he gave credit to the firm on the faith of such representation. The statements and acts of the defendant's alleged co-partners are not evidence against him until he and they are shown to have been connected in some way with each other; and it is obviously reasoning in a circle to infer a partnership from acts of theirs, unless he and they can be connected by other evidence admissible against him."

The rule there stated has been applied by this court. *Downie v. Savage*, 72 Wash. 164, 129 Pac. 1096.

We think the evidence falls far short of proving the existence of a partnership between respondent and Rothstein. And certainly there is no proof of any word or act on the part of respondent which would estop him from denying the existence of such a partnership.

Judgment affirmed.

BEALS, C. J., GERAGHTY, TOLMAN, and HOLCOMB, JJ., concur.