[No. 27469.  Department Two.  August 29, 1939.]

D. G. COLLYER, *Respondent,* v. J. L. EGBERT, *Defendant,* JERRY VANDOS, *Appellant.*[1]

*Newton & Newton* and *Wm. A. Johnson,* for appellant.

*Cooper & Cooper,* for respondent.

BEALS, J.—In his amended complaint upon which the action was tried, plaintiff alleged that the defendants J. L. Egbert and Jerry Vandos were copartners, doing business in the city of Everett under the trade name of Everett Petroleum Distributing Company; that, October 1, 1937, plaintiff delivered to defendant Egbert his check for eight hundred dollars, the proceeds thereof to be used for the purpose of buying a truck for plaintiff; that Egbert, without plaintiff's knowledge or consent, deposited the check to the credit of the partnership composed of himself and Vandos; and that the partnership used the money in payment

[1]Reported in 93 P. (2d) 399.

of partnership debts; that plaintiff demanded of the defendants that they repay the amount which he had delivered to Egbert, but that they refused to do so.

The complaint then set forth a second cause of action, with which we are not concerned, and a third cause of action, repeating the allegations as to the partnership and further alleging that the partnership employed one Art M. Hagen and became indebted to Hagen, for labor performed by him, in the sum of $81.24, which account Hagen had assigned to plaintiff. Judgment was demanded for the amounts due.

Defendant Jerry Vandos, for himself and Everett Petroleum Distributing Company, answered the amended complaint, denying the material allegations of the first cause of action and alleging that any transaction between plaintiff and the defendant J. L. Egbert was a personal loan from plaintiff to Egbert, and that neither Vandos nor the company benefited thereby. Answering the third cause of action, the material allegations thereof were denied.

The action was tried to the court, sitting without a jury, and resulted in findings of fact and conclusions of law in plaintiff's favor and against defendant Jerry Vandos and the partnership (the defendant Egbert not having appeared in the action and apparently not having been served with process), followed by a judgment against defendant Vandos and the partnership, from which defendant Vandos has appealed.

Error is assigned upon the ruling of the trial court denying appellant's challenge to the sufficiency of the evidence interposed at the close of respondent's case; upon the finding of the trial court that Egbert and appellant were partners, and upon several other findings in connection with the relationship of appellant and Egbert; upon the finding of the trial court that respondent's assignor, Art Hagen, performed labor for

defendants at their request; upon the entry of conclusions of law in respondent's favor; and upon the refusal of the trial court to make certain findings of fact and conclusions of law proposed by appellant. Error is also assigned upon the denial of appellant's motion for a new trial, and upon the entry of judgment against him.

The question turns upon the liability of appellant as a partner or associate of defendant Egbert, the trial court having found that Egbert and Vandos were partners, and that, for this reason, appellant Vandos and the partnership were liable to respondent.

It appears that, prior to January 1, 1937, the Sunset Oil Company was acting as a distributor of petroleum products in the city of Everett. Soon after the date mentioned, the company discontinued its operations as distributor, and this branch of the business was taken over by individuals. Defendant J. L. Egbert had been in the company's employ for about five years, and soon after January 1, 1937, the company and Egbert entered into a contract whereby Egbert was to act as distributor of the products sold by the company for the territory in and around Everett. According to the rules of the company, none of its distributors could be a member of any partnership, and Egbert stated to the company's manager that he had no partner.

During the month of December, 1936, there was filed in the office of the clerk of Snohomish county a certificate of assumed name, stating that William Hickey and J. L. Egbert were doing business under the assumed name and style of Everett Petroleum Distributing Company. Late in January following, another certificate was filed, stating that J. L. Egbert was engaged in business under the name and style as above stated.

The business was thereafter conducted under the

trade name referred to, and under the contract with the oil company, until February, 1938, Egbert, being in need of money, made some arrangements with appellant, whereby the latter turned over to Egbert five thousand dollars, Egbert satisfying the oil company that he had this amount of money, which he stated he had received from relatives in Oregon. It is admitted that, under the agreement between Egbert and appellant, checks on the bank account, which was kept in the name of Everett Petroleum Distributing Company, had to be signed by both Egbert and appellant, the notice to the bank in which the account was kept, bearing the signatures of both men, being in evidence, the card bearing the notice, "both signatures required on all checks."

Appellant denies that he was a partner of Egbert. He contends that he simply advanced five thousand dollars to Egbert, of which about three thousand dollars had been returned to him, appellant contending that it was agreed between Egbert and himself that he should sign all checks on the company account, simply as a measure of protection against wrongful diversion of funds by Egbert. Appellant was in the fuel business and purchased oil and gas from Egbert, testifying that he gave Egbert credit for such supplies upon his loan to Egbert, appellant also testifying that he was to receive interest upon the amount loaned, at the rate of six per cent per annum. Appellant also testified that the day after he turned over the five thousand dollars to Egbert, the latter returned fifteen hundred dollars to him. He also talked rather vaguely about a bond which Egbert gave him, but the nature of this bond was not explained.

The evidence clearly discloses that, October 1, 1937, respondent delivered his check for eight hundred dollars to Egbert; that Egbert endorsed this check,

which was also endorsed by Everett Petroleum Distributing Company; that the check was deposited to the credit of the latter company and the amount thereof checked out by Egbert and appellant in payment of company expenses. Respondent and appellant both testified at the trial, but Egbert did not testify, having left the jurisdiction of the court.

■ Apparently it was some time before it occurred to respondent that he had been defrauded, and after he ·was aware of this fact, respondent several times stated that he made no claim against appellant. The trial court held that respondent's statements that he made no claim against appellant were competent evidence and entitled to consideration, but were not conclusive as against respondent, and were simply entitled to be considered with the other evidence before the court. The trial court's position on this phase of the case was clearly correct, appellant contending, of course, that the trial court did not give sufficient weight to this portion of the evidence.

■ The evidence as to the actual business relationship existing between appellant and Egbert is not altogether clear. The company for whom Egbert was acting as distributor forbade him to have a partner. Appellant admits that he turned over to Egbert five thousand dollars and that he took quite an active part in the distributing business, admitting that he signed all checks. The trial court criticized the testimony both of appellant and of respondent, as not entirely frank, and commented upon the fact that, while appellant testified concerning a bond which Egbert executed in his favor, no such document, nor any other paper signed by Egbert bearing upon the relationship between Egbert and appellant, was introduced in evidence. The court also commented upon the fact that

appellant failed to produce the books of account, which the court observed were under appellant's control.

As we said in the recent case of *Barovic v. Constanti,* 183 Wash. 60, 48 P. (2d) 257, the question of fact as to whether or not a partnership existed in a particular case must be determined by the facts shown in that case, "and, for the most part, the facts are to be gleaned rather from the acts and conduct of the parties than from the spoken word."

In 2 Rowley, Modern Law of Partnership, 1230, § 880, it is stated that:

"Partnership, like every other fact, must be proved by competent evidence, and it can not be shown by mere supposition. It may, however, be shown not only by an actual written contract, but by parol, by the acts of the parties, their admissions—in fact, by the circumstances of the case."

This doctrine was recognized by this court in the cases of *Richardton Roller Mills v. Miller,* 99 Wash. 654, 170 Pac. 357, and *Cruickshank v. Lich,* 158 Wash. 523, 291 Pac. 485.

The trial court was of the opinion that appellant was a silent partner, and of course it is admitted that appellant's name was never openly used in connection with the business. Appellant was not a silent partner in the sense that he had no voice in the firm's business. His right to sign all checks indicates a considerable measure of control, whatever was the exact nature of the agreement between appellant and Egbert.

Appellant testified that, before Egbert departed, he had collected on accounts owned by the Sunset Oil Company over $1,100; that there were NSF checks outstanding amounting to $1,148.88; and that the physical assets of the business amounted to less than two hundred dollars. Appellant had possession of such documents as existed, bearing upon the relationship be-

tween himself and Egbert. He also had possession of the books and accounts of the business. Yet, as noted by the trial court, appellant produced at the trial none of these records, and his testimony is vague and unsatisfactory and, to some extent, contradictory. Several of his own witnesses gave testimony which indicates that some business relationship other than creditor and debtor existed between appellant and Egbert. One of appellant's witnesses, Arthur O. Thiry, testified that, during the month of February, appellant told the witness that he (appellant) was part owner of the business.

Many authorities are cited in the briefs, but few are particularly helpful, as this is peculiarly a fact case, depending upon the evidence. In the case of *Potter v. Scheffsky*, 139 Wash. 238, 246 Pac. 576, the appellant, who was seeking to foreclose a chattel mortgage, contended that the trial court had erred in finding that the relationship between the parties was a partnership and not that of creditor and debtor. This court held that, while the evidence was conflicting, it supported the finding of the trial court that a partnership existed. As the case cited was between the persons whom the court found to be partners, a higher degree of proof was required to establish the partnership than is required in the case at bar, in which the fact of partnership was sought to be proven by a creditor. *Cruickshank v. Lich, supra.* Beyond question, the proceeds of respondent's check went into the bank account of the distributing company and was paid out for its benefit.

In 47 C. J. 901, § 385, the rule is laid down as follows:

"In order to charge an undisclosed or dormant partner with an obligation of the firm, it is necessary that such obligation be contracted on the credit of the firm

and be within the scope of the partnership business, or that the proceeds of the obligation be used in the business or for the benefit of the firm."

In the case at bar, respondent's eight hundred dollars was used for the benefit of the firm.

Appellant argues that a partnership is not obligated to pay the individual debts of a partner; and that, before the partnership can be held liable to a third party, it must appear that the obligation was incurred as a partnership debt; and that, even though the contract of the individual partner resulted in a benefit to the partnership, the liability to repay still rests upon the individual partner who incurred it, and not upon the partnership. Authorities which lay down this rule are cited by appellant.

It is true that a partnership may not be liable for the debt of an individual partner, even though the incurring of the obligation inured to the benefit of the partnership, but the rule should not be applied in such a situation as is here presented. Appellant was taking an active interest in the business, in which, according to his own story, he had a considerable investment. He exercised his right to sign all checks on the company's account. This indicates his interest in the funds deposited to the company's credit, and respondent's check for eight hundred dollars was so deposited. A deposit of $1,080.03, made to the company's credit October 2, 1937, which included respondent's eight hundred dollar check, was the largest deposit the company made between September 17, 1937, and March 9, 1938, and in such a business as the parties were conducting, the deposit of an eight hundred dollar check was evidently rather outstanding.

In the case of *Marsh v. Keating,* 1 Bing. (N. C.) 199, 131 Eng. Rep. 1094, it appeared that a partner obtained money by means of forged documents, and the House

of Lords held that the partnership was liable for money received through such acts, stating (p. 1102):

"It must be admitted that they were so far imposed upon by the acts of their partner, as to be ignorant that the sum above mentioned was the produce of the Plaintiff's stock; but it is equally clear that the Defendants might have discovered the payment of the money and the source from which it was derived, if they had used the ordinary diligence of men of business.

"If they had not the actual knowledge, they had all the means of knowledge; and there is no principle of law upon which they can succeed in protecting themselves from responsibility, in a case wherein, if actual knowledge was necessary, they might have acquired it by using the ordinary diligence which their calling requires."

The acquiescence by one partner in a direct financial benefit to the partnership is strong evidence of an intention by the acquiescing partner to recognize, as a partnership debt, any obligation which follows the benefit received. In the case at bar, the evidence concerning the direct benefit accruing to the company is clear. It profited by the transaction to the extent of eight hundred dollars. The trial court, in its "supplemental ruling," stated that the partnership received all the benefits of the check, and that the proceeds thereof were actually paid out upon the signatures of Egbert and appellant; that appellant acquired all of the assets of the partnership by paying all of the claims, except that of respondent.

Respondent relies upon the case of *In re Ketchum*, 1 Fed. 815. The opinion is long, and contains language which is in point here.

This court, in the case of *Constanti v. Barovic*, 199 Wash. 117, 90 P. (2d) 724, considered the partnership relation in an action in which the plaintiff contended that such a relation existed, this court holding,

contrary to the judgment of the superior court, that the parties were partners. It appeared that one of the parties advanced money, which was to be returned to him before the proceeds of the business could be divided, this court holding that such a state of facts nowise detracted from the force of the partnership contract, and that the liquidation of this partner's initial investment in the undertaking was not a condition precedent to the establishment of the partnership relation. It was held that the question of whether or not a partnership exists "depends upon the intent of the parties as manifested by their conduct, statements, and written contracts." In the course of the opinion, this court quoted from the case of *Nicholson v. Kilbury*, 83 Wash. 196, 145 Pac. 189, the following language:

" 'There is no arbitrary rule by which it may be determined whether a partnership relation existed in a given instance or not. The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties. While a contract of partnership, either expressed or implied, is essential to the creation of the partnership relation, it is not necessary that the contract be established by direct evidence. The existence of the partnership may be implied from circumstances, and this is especially true where, as here, the evidence touching the inception of the business and the conduct of the parties throughout its operation, not only tends to show a joint or common venture but is in the main inconsistent with any other theory'."

Appellant relies upon the opinion of this court in the case of *Lansdown v. Huff*, 103 Wash. 277, 174 Pac. 21, in which an order of the superior court granting a new trial, after the verdict of a jury in favor of the plaintiff, in an action on a contract, was affirmed. This court held that an instruction which the trial court

gave to the jury was erroneous, in that it was so worded that the jury might have concluded that the plaintiff was entitled to recover if he or his assignors believed, or had a reasonable right to believe, that the defendant was a partner. Concerning that question, this court said:

"We do not think this is the law. No matter how reasonable appellant's belief may have been, if no partnership in fact existed, and Huff had no knowledge that he was being held out as a partner, and did not hold himself out to be such, there could be no liability."

The case is not here in point.

Appellant also relies upon the case of *Lowenstein v. Whitelaw*, 178 Wash. 428, 34 P. (2d) 1108, in which the plaintiff sought to hold the defendant as a partner of one Rothstein. This court, after noting the rule that "one is liable to third persons as a partner only when a partnership actually exists, or when, by his conduct, he is estopped from denying it," and the further rule that the burden of proving the existence of a partnership, or facts in law amounting to an estoppel, rests upon the person asserting it, affirmed the ruling of the trial court in favor of the defendant, saying that the evidence fell far short of proving the partnership, and there was no proof of any fact which would constitute estoppel. The case is not in point.

Respondent testified that appellant told him that he (appellant) wanted four thousand dollars for his interest in the business, and also testified to a conversation between appellant, the attorney for the Sunset Oil Company, and himself, in which, according to respondent, the attorney said to appellant, referring to the business here in question: "You are a partner and have a perfect right to go down and look at the plant," to which appellant answered, "Maybe I am." Appellant denied that any such conversation had been had,

and that he had offered to sell, and the attorney who it was alleged made the statement to appellant was not called as a witness. There were other contradictions in the evidence.

This case depends upon the facts, and is one in which the judgment of the trial court, who heard and saw the witnesses, carries especial weight. The trial court made a positive finding that appellant and Egbert were copartners, doing business as a partnership, "with J. L. Egbert, as the active managing partner and Jerry Vandos, as the silent partner." Appellant strenuously attacks this finding, but we are convinced that this court should not hold that the trial court erred in making it.

The court did not err in denying appellant's challenge to the sufficiency of the evidence at the close of respondent's case, and the other findings find ample support in the evidence.

We conclude that it was properly held that respondent was entitled to judgment against appellant upon both the first and third causes of action set forth in respondent's amended complaint, and the judgment appealed from is accordingly affirmed.

BLAKE, C. J., GERAGHTY, MAIN, and SIMPSON, JJ., concur.