[No. 4690–7–III.   Division Three.   December 16, 1982.]

JOE JOHNSON, *Respondent,* v. WILLIAM SLUSSER,
ET AL, *Appellants.*

*Lloyd Pike* and *Scott C. Broyles,* for appellants.

*Clinton J. Henderson,* for respondent.

Munson, J.—William Slusser and Steve Olsen appeal from a trial court's determination that they were jointly and severally liable to Joe Johnson for debts incurred while logging. We reverse as to Mr. Slusser and his wife and the finding of a partnership. We remand for determination of the amount to be awarded Mr. Slusser.

In 1979, Joe Johnson made his living by purchasing standing timber, having it logged, and then selling the logs to mills. Steve Olsen was hired as an independent logger, and Mr. Johnson paid him on a "draw and settlement" system in which the contractor would either pay the logger for logs for which the contractor had also been paid (settlement) or advance money for logs piled or stacked but not taken to the mill (draw). In a draw, the parties would estimate the number of board feet in logs down and stacked. When the contractor was paid at the mill for the actual number of board feet, he would reconcile with the logger.

Exhibit 1 shows a series of draws beginning in June 1979. By July 3, 1979, prior to Mr. Slusser's earliest appearance, Mr. Olsen owed $8,184.55. By October 10, 1979, Mr. Olsen owed Mr. Johnson $9,723.10. This was never paid and is the debt Mr. Johnson argues Mr. Slusser assumed.

In July 1979, Bill Slusser worked for Steve Olsen for 3 days. Mr. Slusser testified he did not work again until he moved up from California in late October. Mr. Johnson testified Mr. Slusser arrived in mid–July and returned periodically during the summer. Later, however, Mr. Johnson stated he was unsure whether Mr. Slusser had worked in August or September. Mr. Johnson's son testified Mr. Slusser worked in early July as Mr. Slusser had stated. Mr. Johnson's son–in–law testified he first saw Mr. Slusser in July and periodically until October, when Mr. Slusser began to work full time. On cross examination, he admitted he did not know when Mr. Slusser was there prior to October, but stated Mr. Slusser was there three or four times.

Mr. Johnson testified he asked Mr. Olsen who the stranger was working with him. Mr. Olsen replied it was his future father–in–law and "they would probably go part-

ners". Mr. Johnson's son–in–law understood they were going to be partners, but he did not believe they were partners in July. Mr. Johnson also testified the partnership was formed after the Duckworth job, which began approximately June 16, 1979, and ended in late November 1979. Mr. Slusser and Mr. Olsen both testified the partnership issue did not arise until November; a formal partnership agreement was signed February 13, 1980. In the partnership agreement, they agreed Mr. Olsen would be the managing partner. Nothing in the agreement indicates the partnership assumed the existing debts of either partner.

Mr. Slusser testified he did not believe Mr. Olsen owned the logging equipment free and clear, but he was unaware until after the partnership was formed that Mr. Olsen owed money to Mr. Johnson. Mr. Olsen testified he told both Mr. Slusser and Mr. Johnson he would be personally liable for all past debts. Mr. Johnson testified he had not discussed with Mr. Slusser whether the partnership would assume Mr. Olsen's debts.

When Mr. Olsen could not make his 1980 payment on a D–6 Caterpillar, it was repossessed and he quit working. Mr. Slusser continued to work for 3 weeks, but quit when Mr. Johnson refused to pay him for his work because of the $9,723.10 debt. Mr. Slusser filed a lien against Mr. Johnson's logs; Mr. Johnson countered with a lawsuit, claiming Mr. Slusser was liable as a partner for the debt. He also claimed he was damaged by the effects of the lien. The trial court agreed, held the $9,723.10 debt became a partnership obligation when the formal partnership was formed, found damages of $8,335.45 arising from the wrongful filing of a lien, and subtracted $6,299.36 which Mr. Johnson owed the partnership. Mr. Olsen and Mr. Slusser appealed.[1] Mr. Slusser contends the trial court erred in entering the fol-

---

[1]Mr. Olsen admitted at trial he was liable for the $9,723.10 and therefore has no standing to argue he is not liable. Mr. Olsen's theory (that Mr. Johnson wrongfully withheld the funds due him) has not been presented to this court and therefore has been waived. The only issue is whether Mr. Slusser can be held liable for any or all of the debt.

lowing conclusion of law:

> 2. Steve Olsen and William Slusser, by their acts and conduct in working together and holding themselves out as partners have created a partnership by estoppel under RCW 25.04.160.[2]

RCW 25.04.160 can best be explained by reference to 68 C.J.S. *Partnership* § 31, at 456 (1950):

> When persons, not partners inter se, have held themselves out as partners, and thereby induced others to deal with them as such, it is no defense that there was no partnership between them. One who holds himself out as a partner becomes liable as such to those who deal with the firm in the belief that he is a partner, and he cannot avoid liability on the ground that a recorded instrument would show that he had no interest in the partnership. The same liability attaches to one who knowingly allows himself to be held out as a partner.

(Footnotes omitted.) The statute adds that representation can be made by either word or conduct.

---

[2]RCW 25.04.160:

"(1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

"(a) When a partnership liability results, he is liable as though he were an actual member of the partnership.

"(b) When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately.

"(2) When a person has been thus represented to be a partner in an existing partnership, or with one or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation. Where all the members of the existing partnership consent to the representation, a partnership act or obligation results; but in all other cases it is the joint act or obligation of the person acting and the persons consenting to the representation."

██ Our review is limited to determining whether substantial evidence supports the findings and the findings in turn support the conclusions of law. *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 617 P.2d 704 (1980); *Mayo v. Mayo,* 75 Wn.2d 36, 448 P.2d 926 (1968).

The following challenged findings of fact relate to the representation of partnership:

4. Joe Johnson, concerned about liability as timber owner, inquired as to the relationship between Steve Olsen and William Slusser and was told that they were partners.

5. William Slusser made statements to loggers working on Joe Johnson's timber that he was Steve Olsen's partner during the summer and prior to September 24, 1979.

Neither finding is correct in its entirety.[3]

██ Mr. Johnson did inquire of Mr. Slusser's relation to Mr. Olsen in order to ascertain whether Mr. Slusser was an employee who needed to be covered by industrial insurance. Mr. Olsen told him they would be partners in the future. Mr. Johnson's son–in–law also understood the partnership would exist in the future and testified Mr. Slusser worked only three or four times between July and October. The record contains nothing to indicate Mr. Slusser told anybody during this period that he was going to be a partner with Mr. Olsen, much less that he was a partner. The record shows Mr. Johnson paid Mr. Slusser and Mr. Olsen separately for this work. Thus, nothing in the record will support findings which indicate Mr. Slusser held himself out or allowed Mr. Olsen to hold him out as a partner. A

---

[3]Finding of fact 6 contains a mixed finding of fact and conclusion of law. There is no factual basis for the finding. Finding of fact 9 is incorrect; the record does not show any advances for the Caterpillar payment, let alone the $12,000 advance. Finding of fact 11 states no creditors were shown the partnership agreement; this is not in the record. Finding of fact 13 is totally incorrect. The record shows the partnership still owned a skidder and D–5 Caterpillar. The partnership was put out of business because Mr. Johnson refused to allow any more time on the debt. Finding of fact 14 intimates Mr. Olsen and Mr. Slusser quit working, which led Mr. Johnson to withhold the money owed. This is incorrect; the record shows Mr. Slusser quit after Mr. Johnson called in the debt. Finding of fact 18 incorrectly calculates the amount of the offset.

partnership by estoppel cannot exist unless a person holds himself out as a partner or permits another to do so. *Lowenstein v. Whitelaw,* 178 Wash. 428, 34 P.2d 1108 (1934); *Lansdown v. Huff,* 103 Wash. 277, 174 P. 21 (1918). Assuming arguendo the record contains sufficient testimony to show Steve Olsen held Mr. Slusser out as a partner, both the statute and the common law require that Mr. Slusser have assented to the representation. There is no evidence of assent or knowledge on the part of Mr. Slusser that Mr. Olsen was holding him out as a partner. *Lowenstein v. Whitelaw, supra* at 432; *Lansdown v. Huff, supra* at 278.

█ Finally, no findings relate to inducement or reliance, a key element of estoppel. *See Downie v. Savage,* 72 Wash. 164, 129 P. 1096 (1913); *Marszalk v. Van Volkenburg,* 24 Wn. App. 646, 604 P.2d 501 (1979). Estoppel requires: (1) an admission, statement or act inconsistent with the claim afterwards asserted; (2) an action by the other party on the faith of such admission, statement or act; and (3) an injury to the other party if the claimant is allowed to contradict or repudiate his earlier admission, statement or act. *Liebergesell v. Evans,* 93 Wn.2d 881, 613 P.2d 1170 (1980).

█ The record shows Mr. Johnson relied entirely on the credit of Mr. Olsen and did not advance money to Mr. Olsen in the belief Mr. Slusser was a partner. 68 C.J.S. *Partnership, supra.* Conclusion of law 4 states, however, the partners are estopped from denying they assumed the debt because "they continued to deal with Joe Johnson in the same manner Steve Olsen had always done, . . ." Mr. Slusser argues this conclusion is incorrect, citing *Waldrop v. Holland,* 22 Wn. App. 336, 339, 588 P.2d 1237 (1979), where the court stated: "A loan made to a partner in his individual capacity before formation of the partnership is not a partnership debt unless it is expressly assumed by the partnership." Mr. Slusser argues the debt was created before he entered into any partnership with Mr. Olsen and the record does not show he expressly assumed the debt. Mr. Slusser is correct. The record contains neither admissions, statements nor an express act which could be con-

strued to amount to an assumption of Mr. Olsen's debt by Mr. Slusser.

Findings of fact 8 and 10 state Mr. Slusser and Mr. Olsen continued to deal with Mr. Johnson in the same manner as before. Finding of fact 7 while correct does not change Mr. Olsen's debt to a partnership debt. What the record does reflect is that the $9,723.10 which the trial court held to be a partnership debt is the same debt owed prior to the formation of any partnership. The record does not reflect any further draws or settlements made after October 10, 1979, nor does it contain any evidence which shows Mr. Johnson expected Mr. Slusser to become responsible for the debt. In short, neither estoppel nor ratification are shown by the facts. This case is reversed and remanded to decide the correct amount of Mr. Slusser's lien against Mr. Johnson.

ROE, A.C.J., and GREEN, J., concur.

Reconsideration denied January 25, 1983.

Review denied by Supreme Court March 29, 1983.