[No. 62984-6.    En Banc.    February 8, 1996.]

LAWRENCE A. BARNES, *Petitioner*, v. JOHN O.
MCLENDON, ET AL., *Respondents*.

*Timothy W. Mahoney*, for petitioner.

*Evans, Craven & Lackie, P.S.*, by *Patrick M. Risken* and *Hugh O. Evans*, for respondents.

ALEXANDER, J. — Lawrence Barnes obtained review of a decision of the Court of Appeals in which that court affirmed a summary judgment of the superior court, dismissing Barnes's claim against the named defendants, Bruce Kaiser, Keith Douglass and "a partnership doing business as McLendon and Kaiser, Attorneys at Law," for recovery of the balance owing on a promissory note. Clerk's Papers at 1. In affirming the superior court, the Court of Appeals concluded that Barnes's claim against the defendants was barred by the statute of limitations and that, in addition, Barnes had failed to raise a genuine issue of material fact as to whether liability on the promissory note extended to Kaiser and Douglass as members of an alleged partnership composed of McLendon, Kaiser and Douglass.

Viewing the evidence presented at the summary judgment hearing in the light most favorable to Barnes, the following facts emerge. On April 2, 1981, Lawrence Barnes was badly injured while working for the Burlington Northern Railroad. Early in 1982, Barnes hired an attorney, John McLendon, to represent him in a personal injury action he contemplated bringing against Burlington Northern. At that time, McLendon was practicing law

in Spokane with Bruce Kaiser under the firm name of McLendon & Kaiser.

It is not entirely clear from the record when the law firm of McLendon & Kaiser came into existence. Although Kaiser indicated that he began working for the firm in 1979 as a Rule 9 intern, he claims that he was never anything more than an employee of the firm. He concedes, however, that he and McLendon began advertising their services in the yellow pages in 1982, identifying themselves as McLendon & Kaiser, and that they employed radio and television advertising under that same name.

McLendon, on Barnes's behalf, commenced a lawsuit in Spokane County Superior Court against Burlington Northern Railroad. Although McLendon was primarily responsible for the conduct of this litigation, Kaiser assisted in the effort by attempting to prevent Barnes from drinking alcohol in order to be "cleaned up for trial." Clerk's Papers at 124.

In March 1984, a jury reached a verdict against Burlington Northern and awarded Barnes damages in the amount of approximately $3,400,000. The verdict was reduced to a judgment, which Burlington Northern paid. The record shows that approximately $1,912,000 of that amount was deposited into an account of McLendon & Kaiser. Kaiser asserts that all of that money went to McLendon. He concedes, however, that he received a $20,000 "bonus" for his work on Barnes's litigation against Burlington Northern. Clerk's Papers at 113.

Douglass joined the McLendon & Kaiser firm on December 1, 1984. Douglass stated in a deposition that he was an independent contractor during the time he worked at the firm. Although Douglass agrees that he and Kaiser had similar duties and responsibilities at McLendon & Kaiser, he asserts that of the two of them only Kaiser was authorized to sign checks on behalf of the firm.

On April 17, 1985, McLendon executed a promissory note in favor of Barnes in the amount of $1,250,000. The note, which was signed by McLendon in the office of

McLendon & Kaiser, provided for monthly payments of $6,500 with no interest on the unpaid balance. According to the terms of the note, payments were to begin on May 15, 1985. The note contained only McLendon's signature, there being no indication on the instrument that any of the other attorneys associated with McLendon & Kaiser were obligated on the note.

The promissory note that McLendon signed was apparently given as consideration for a $750,000 check that Barnes wrote to McLendon in the offices of McLendon & Kaiser on the same day the note was executed. Barnes later claimed that he understood that the money was to be used by McLendon & Kaiser for "office expenses. . . . [e]quipment or whatever. . . [and] a bunch of computers to run the office by." Clerk's Papers at 101.

While the parties disagree as to whether the obligation on the note was personal to McLendon or extended to Kaiser and Douglass as well, it is not disputed that McLendon deposited at least $428,000 of the $750,000 loan into the operating account of McLendon & Kaiser. Although Kaiser contended that he knew nothing of the loan from Barnes, Douglass conceded that he "was aware that John [McLendon] had borrowed some monies from Larry Barnes probably in March or April of 1985." Clerk's Papers at 273. Douglass also admitted that the loan was "tied into the purchase of the computer equipment." Clerk's Papers at 273. Kaiser's wife, a secretary at McLendon & Kaiser, was also aware of the loan.

Barnes and McLendon were also involved in a separate transaction in which Barnes loaned McLendon $200,000 to be used in the operation of a gun club known as the "Trap House." The club was owned by McLendon and his wife, Janet Wayne.[1]

McLendon made the first payment on the promissory

---

[1]The record is not clear about whether the $200,000 that went to the Trap House came from the $750,000 check that Barnes gave to McLendon. The Court of Appeals concluded that it did and certain portions of Barnes's deposition seem to support that conclusion. Clerk's Papers at 31. McLendon also makes this assertion in an affidavit. Clerk's Papers at 145-46. Barnes has also stated,

note in May 1985 with a check drawn on the McLendon & Kaiser account. No further payments have been made on the note by McLendon, Kaiser or Douglass and, as a consequence, it remains unpaid.[2]

On January 15, 1986, Douglass and Kaiser ended their professional relationship with McLendon. In a letter to McLendon, Douglass and Kaiser requested that "all representation of McLendon & Kaiser as a partnership be terminated as of this date." Clerk's Papers at 135. In addition, they demanded that "an accounting be made of all partnership assets and liabilities of McLendon & Kaiser for purposes of dissolution of same, to the extent any partnership is found to exist." Clerk's Papers at 135. Kaiser and Douglass also took possession of the case files that they had been working on at McLendon & Kaiser. They then formed a new law firm named Kaiser, Douglass and Lewis[3] and continued to provide representation for some of the former clients of McLendon & Kaiser.

McLendon brought suit against Kaiser and Douglass claiming that they had misappropriated 590 of his case files. Kaiser and Douglass eventually settled the lawsuit with McLendon by agreeing to pay him $160,000. As part of the settlement, McLendon was required to obtain a statement from Barnes releasing Kaiser and Douglass from any liability on the promissory note that McLendon had signed and given to Barnes. To fulfill that condition, one of McLendon's attorneys prepared a handwritten statement for Barnes's signature. The statement provided that Barnes had loaned money to "John O. McLendon only and not to any of his employees or law associates including, but not limited to Bruce Kaiser, Keith Dou-

---

however, that the Trap House loan was by a separate check. Clerk's Papers at 34-35.

[2]In addition to his relationship with Barnes, McLendon was involved in several other questionable transactions including borrowing money from other clients and making unauthorized withdrawals from trust accounts. These resulted in this court suspending McLendon from the practice of law for two years. *See In re McLendon,* 120 Wn.2d 761, 845 P.2d 1006 (1993).

[3]Cassandra Lewis was an attorney who also worked at McLendon & Kaiser. She was not named as a defendant in the lawsuit that led to this appeal.

glass, or Cassandra Lewis." Clerk's Papers at 51. McLendon's attorney presented the statement to Barnes but did not suggest to Barnes that he should seek independent advice as to whether he should sign the statement. McLendon claims that he did not learn that his attorney had contacted Barnes until after the statement was signed by Barnes. McLendon asserts that the statement was prepared "for the sole purpose of promoting settlement of my case against Defendants Kaiser, Douglass and Lewis so that sufficient funds would be available to pay my legal fees." Clerk's Papers at 147-48.

Barnes commenced this action on May 10, 1991, nearly six years after McLendon defaulted on the note. He named McLendon, Wayne, Kaiser, Douglass and the firm of McLendon & Kaiser as defendants.[4] Barnes asserted that the $750,000 loan was made to McLendon as well as to the law firm of McLendon & Kaiser for business purposes, including buying new computer equipment and making general improvements, and was, therefore, a partnership debt. Kaiser and Douglass moved for summary judgment and for CR 11 sanctions against Barnes, arguing that they were not obligated on the note because they were merely employees of McLendon, not partners, and that the loan was personal to McLendon. They also asserted that Barnes's suit was barred by the applicable statute of limitations.

The trial court granted Kaiser and Douglass's summary judgment motion and dismissed Barnes's claims as to all of the defendants, except McLendon. It, however, denied their request for CR 11 sanctions and attorney fees. Barnes thereafter obtained a default judgment against McLendon and appealed to Division Three of the Court of Appeals the order dismissing his claims against the other defendants.

Barnes's appeal was transferred to Division One of the Court of Appeals, which affirmed the trial court. In so do-

---

[4]Janet Wayne is no longer a party to this lawsuit.

ing, it concluded that Barnes's action was barred by the three-year statute of limitations. It also held that although Barnes had succeeded in raising a genuine issue of material fact as to the existence of a partnership between McLendon, Kaiser and Douglass, he failed to raise a genuine issue of material fact as to whether the debt was an obligation of that partnership. The Court of Appeals denied Kaiser and Douglass's request for attorney fees on appeal. We granted review of the Court of Appeals decision.

■ When reviewing an order of summary judgment, an appellate court engages in the same inquiry as the trial court, after considering the facts in the light most favorable to the nonmoving party. *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992). Summary judgment should be granted only when it can be said there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c); *Hibbard*, 118 Wn.2d at 744.

## I

In affirming the superior court's order of summary judgment, the Court of Appeals concluded that Barnes's action was barred by RCW 4.16.080, a statute that limits certain actions to three years. Barnes contends that the court erred in reaching that conclusion, arguing that his action was viable for six years. We must determine, therefore, if the applicable statute of limitations on Barnes's suit is three years, as the Court of Appeals concluded, or six years, as Barnes asserts. Relevant to this issue, the parties agree that Barnes's cause of action accrued on June 15, 1985, the date McLendon failed to make his second scheduled payment. They also agree that Barnes did not bring his suit on the note until May 10, 1991, a date that is more than three years and slightly less than six years after Barnes's cause of action accrued.

Barnes contends that his lawsuit was brought within the applicable statute of limitations, observing that ac-

tions "upon a contract in writing, or liability express or implied arising out of a written agreement" may be brought within six years. RCW 4.16.040(1). Kaiser and Douglass assert that because they did not sign the promissory note that McLendon gave to Barnes, their contractual obligation, if any, was partly oral and that Barnes's action was properly barred as an "action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument" which is required to be brought within three years. RCW 4.16.080(3).

For a contract to be subject to the six-year statute of limitations, it must be in writing and the writing must contain all essential elements of a contract. *Cahn v. Foster & Marshall, Inc.*, 33 Wn. App. 838, 840-41, 658 P.2d 42, *review denied*, 99 Wn.2d 1012 (1983). If parol evidence is necessary to establish any material element of the written contract, then the contract is partly oral and the three-year statute of limitations applies. *Cahn*, 33 Wn. App. at 841. The Court of Appeals, relying on *Cahn*, reasoned that because Kaiser and Douglass's liability on the note given to Barnes could be established only by parol evidence, their contractual obligation, if any, was partly oral and the three-year statute of limitations applied.

In *Cahn*, the plaintiff bought $50,000 worth of New York State bonds, relying upon representations by a brokerage house that were made to him orally and in a wire transmission, to the effect that the New York State Legislature was guaranteeing the bonds. That representation proved to be false and, as a consequence, the plaintiff sold the bonds at a loss. Five years later, the plaintiff brought suit against the brokerage house for breach of contract. The trial court dismissed the suit, holding that it was barred by the statute of limitations. The Court of Appeals upheld the trial court's determination that the statute of limitations barred the suit. In reaching that decision, it concluded that the writings were merely memoranda confirm-

ing a stock transaction and did not contain the essential elements of a contract, and because parol evidence was necessary to establish the essential terms of the contract, any contract, therefore, was partly oral and subject to the three-year statute of limitations.

We are satisfied that *Cahn* has no application to this case. The issue in *Cahn* that was critical to the statute of limitations issue was whether there was a valid written contract between the parties. That is not the issue here because all of the parties agree that Barnes has an enforceable written instrument, the promissory note given to him by McLendon. Rather, the question in this case is whether or not the alleged partners of McLendon & Kaiser are obligated on the note.

More pertinent to this case is our decision in *Warren v. Rickles*, 129 Wash. 443, 225 P. 422 (1924), *aff'd*, 134 Wash. 701, 235 P. 673 (1925). In *Warren*, the defendants were partners in a junk dealership. On a trip to Alaska, one of the partners, Kempf, purchased a certain amount of junk for use in the business of the partnership. Kempf then hired a freight company to transport the purchase to Seattle. The freight company issued a bill of lading to Kempf who signed it. Kempf later took delivery of the junk in Seattle on behalf of the partnership. The freight company was never paid and, consequently, it sued Kempf individually and obtained a judgment against him.

Five years later, apparently unable to satisfy the judgment it had against Kempf, the freight company brought a second suit against all of the partners of the junk dealership. In concluding that the freight company's action against the partners was not barred by the statute of limitations, we held that the partners' liability arose out of the written contract even though none of the partners other than Kempf was named in the bill of lading. Significantly, we stated that "[a]lthough Kempf made the written contract in his own name, he made it for the benefit of the partnership, consequently the liability of the individual partners grew out of the written contract" and

the six-year statute of limitations applied. *Warren*, 129 Wash. at 445.

The Court of Appeals concluded that *Warren* was not on point, reasoning that the partners in *Warren*, unlike the alleged partners here, admitted that a partnership existed. It concluded, therefore, that "[p]arol evidence was simply a nonissue in *Warren*." *Barnes v. McLendon*, No. 35089-7-I, slip op. at 9 (May 8, 1995). The flaw in this reasoning is that it ignores the fact that the admissions of the partners in *Warren* are parol evidence. The fact that this proof came into evidence as an admission or stipulation does not alter the fact that the substance of the admissions was parol evidence. We fail, therefore, to see how this case can be distinguished from *Warren*. In *Warren*, as in the instant case, a partner entered into a contract with a third party. Despite the fact that the written contract did not indicate that other partners had liability on the contract, all of the partners were found to have liability arising out of their relationship as partners, the parol evidence merely establishing the partnership relationship between the defendants, not the terms of the contract.

Similarly, the liability of Kaiser and Douglass, if any, arises out of the contract executed by one partner and by virtue of the alleged partnership agreement between them and McLendon and is imposed as a matter of law. Each partner acts as an agent for the partnership, and the act of every partner "for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership," unless the acting partner has no authority to act for the partnership and the person with whom he is dealing has knowledge of that fact. RCW 25.04.090(1). Furthermore, when a contract is made in the name of an individual but for the benefit of the partnership, there is implied liability on the part of other partners even though they are not named. *Warren*, 129 Wash. at 445. It follows that once a written contract is established, and here there is no dispute about the fact that a written instrument exists, it is a separate factual

inquiry as to whether or not the contract benefited the partnership or was executed within the ordinary course of partnership business, thereby binding the partnership. Because an action on a written instrument remains viable for six years, Barnes's action was, therefore, commenced within the applicable period for contract actions.

## II

The next issue that we must address is whether Barnes succeeded in raising an issue of material fact as to whether the obligation was incurred within the scope of partnership business, thereby implicating partnership liability on the part of Kaiser and Douglass as well as McLendon.[5] The Court of Appeals concluded that Barnes did not raise genuine issue of material fact that the obligation extended to the partnership. In our view, that was error because, viewing the evidence, as we must, in the light most favorable to Barnes, it is apparent that sufficient evidence was presented to raise a genuine issue of material fact on that issue.

As previously noted, each partner acts as an agent for the partnership and a partner's acts bind the partnership and the other partners when the acting partner is apparently carrying on the normal and usual business of the partnership. RCW 25.04.090. A contract does not need to be signed by all partners or even mention the name of the partnership in order to bind the partners. *Warren*, 129 Wash. at 445. *See also* 59A Am. Jur. 2d *Partnership* § 286 ("A contract binding on a partnership need not be signed by all of the partners."). In order to bind unnamed partners, the obligation must be within the scope of the partnership business or the proceeds must be used in the business or for the benefit of the firm. *Collyer v. Egbert*,

---

[5]The Court of Appeals concluded that the trial court was correct in determining that Barnes raised a genuine issue of material fact as to whether a partnership existed between McLendon, Kaiser and Douglass. That determination has not been assailed and, therefore, we need not address it here.

200 Wash. 342, 348-49, 93 P.2d 399 (1939). Admissions or representations made by any partner regarding partnership affairs within the scope of his authority is "evidence against the partnership." RCW 25.04.110.

In reaching its conclusion that Barnes did not raise a genuine issue of material fact as to whether the obligation extended to Kaiser and Douglass, the Court of Appeals relied primarily upon the statement signed by Barnes to the effect that Barnes would seek payment only from McLendon. The existence of that statement does not, however, resolve this issue. Indeed, its probative value is diminished by the fact that the statement was prepared by McLendon's attorney and was signed by Barnes at a time when he was without the benefit of independent counsel. In that same vein, McLendon described Barnes as being easily persuaded and incapable of exercising good judgment. Furthermore, McLendon contends that he was not aware that his attorney obtained Barnes's signature until after the fact. He asserts that his attorney's objective in obtaining Barnes's signature was primarily to ensure that there would be sufficient funds to pay legal fees.

The Court of Appeals also relied on certain unidentified "admissions" by Barnes that he made a personal loan to McLendon. *Barnes*, No. 35089-7-I, slip op. at 7 n.4. Although Barnes indicated in a deposition that he made a personal loan to McLendon, his testimony in that regard evidenced some confusion and he frequently contradicted himself.[6] Importantly, Barnes stated that he understood the loan was for expenses of McLendon & Kaiser and for computer equipment to be used by the law firm.

As further evidence that the law firm benefited from the proceeds of the loan, Kaiser admitted that $428,000 of the loan was deposited into McLendon & Kaiser's bank ac-

---

[6]A few times during the course of his deposition, Barnes seemed to indicate that he expected only McLendon to repay the loan. At other times, however, he stated that the loan was made to the entire firm and that Kaiser and Douglass were to assist in paying it back. Clerk's Papers at 47, 49, 99, 103-04.

count. He also conceded that the one payment that was made on the note was by a check drawn on the account of McLendon & Kaiser. Douglass also admitted that he knew about the loan and its purpose almost from the time that it was made. These facts, when combined with the fact that the loan was executed in the McLendon & Kaiser office, are sufficient, when viewed most favorably to Barnes, to create a fact question about whether McLendon was carrying on partnership business when he borrowed the money from Barnes.

### III

Kaiser and Douglass also request attorney fees for defending what they contend is a frivolous appeal. RAP 18.9(a). Because Barnes has prevailed on appeal, it follows that his appeal is not frivolous.

The Court of Appeals is reversed and this case is remanded to the superior court for trial.

DURHAM, C.J., DOLLIVER, SMITH, JOHNSON, MADSEN, and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.

Reconsideration denied March 26, 1996.