[No. 21633-7-II.    Division Two.    September 18, 1998.]

LARRY L. BROWNING, ET AL., *Appellants*, v. KENNETH L. HOWERTON, ET AL., *Respondents*.

*Erwin P. Jones, Jr.*, for appellants.
*Thomas J. Majhan*, for respondents.

SEINFELD, J. — Larry and Shirley Browning, purchasers of real estate, sought to reform the real estate contract. They contended there was a mutual mistake regarding the acreage, which led to a mistake as to price. Applying the three-year statute of limitations for actions based upon oral contracts or actions grounded in fraud, the trial court dismissed the case as untimely. On appeal, the Brownings argue that the trial court should have applied the six-year limitation period for actions "arising out of a written agreement." RCW 4.16.040. We affirm, holding that the three-year statute of limitations is appropriate in a reformation

action where the plaintiff seeks to use parol evidence to modify a material term.

## FACTS

In October 1992, Kenneth and Peggy Howerton agreed to sell the Brownings an undeveloped parcel of real property in Jefferson County. Both parties believed that the parcel contained 18 acres because the 1992 property tax statement, a copy of which the Howertons had provided to the Brownings, indicated that amount.

The parties entered into an earnest money agreement that reflected a total purchase price of $59,400 and described the property as: "S6 T28 R1E 18.00 A, Lot 4 (S. of Egg & I Road & W of Port Ludlow Rd.)." They agreed to execute a real estate contract for the balance of the purchase price. In a later declaration, Mr. Browning stated that he calculated the value of the land based upon $3,300 per acre times the 18 acres.

In November 1992, the Brownings and Howertons executed the real estate contract at issue in this case. It provided for monthly installments for a period of approximately five years, at which point all outstanding principal and interest would be due and payable. Although the contract contained a legal description of the property and stated the total purchase price, it did not state the total acreage or provide a per acre price. It contained an integration clause as part of the general terms.

Sometime later the County conducted an aerial survey and discovered that the parcel contained only 11.22 acres, not 18 acres. The Brownings received notice of the correction in February 1993, when they received a tax statement with the new acreage figure. Upon learning of the discrepancy, Mr. Browning brought it to the Howertons' attention, hoping to resolve the matter by reducing the total purchase price.

In April, the Howertons wrote a letter to the Brownings expressing their intent to request a survey by the County

as a first step in resolving the matter. The Howertons also stated:

> We want to do what is right just like you do. We still feel the property is probably worth what you paid and would be glad to have it back. On the other hand, we understand how you feel too. If you do not want to make any more payments until this is resolved, that is OK. We will try to get things taken care of as soon as possible.

In May, the Brownings consulted an attorney and in August, they sent a notarized letter to the Howertons indicating their intent to continue making payments on the *11.2* acres while reserving the right to contest the contract price at a later date.

In October 1996, the Brownings filed suit against the Howertons alleging mutual mistake, inequitable conduct, and fraud. They sought to have the contract price reformed to reflect a total of $3,300 per acre times the true acreage. As of October 1996, the Brownings' payments had not yet exceeded the requested reformation price. In their answer, the Howertons admitted that there had been a mutual mistake as to the acreage and fraud to the extent "misrepresentations made through honest mistakes constitute fraud in law."

Both parties moved for summary judgment. The trial court dismissed the case, concluding that it was time-barred by the three-year statute of limitations. The court found the six-year limitation period inapplicable, stating:

> It is interesting that the restatement refers to both mistakes and misrepresentations in the sale transaction as constituting a "tort." A "tort" arguably, is an action independent of, and, at best collateral to the contract. In other words, the act, being the mutual mistake or misrepresentation does not arise "out of" the contract but rather as an independent cause of action merely associated with the actual contracting itself.
>
> . . . It has also been held that a party asserting a written agreement for purposes of applying the six year Statute of Limitation must prove that each essential element of the al-

leged written contract exists in the writing. If parole [sic] evidence is necessary to prove any material element of the claimed contract the agreement is deemed partly oral and the three year oral contract Statute of Limitations applies. *Cahn v. Foster and Marshall, Inc.*, 33 Wn. App. 838, 658 P.2d 42 (1983).

In this case the contract is silent as to whether or not it was to sell property with a per acre price or not. It is silent as to the acreage sold. On its face the contract is complete and enforceable. It is only with the addition of what, in effect, is alleged to have been an additional oral agreement, that is, that the property was to contain 18 acres, (and the further implication that it was to be sold at $3,300.00 per acre) that . . . this claim arises. That "agreement" is wholly oral. Parole [sic] evidence is necessary to establish that agreement. To the extent then that the Real Estate Contract can be said to have contained an agreement that there be 18 acres, which was a mutually mistaken agreement, that agreement is an oral agreement and subject to a three year statute of limitations.

The Brownings appeal the trial court's dismissal of their case and denial of their motion for summary judgment.

## STATUTE OF LIMITATIONS
### A. Written Agreement

We first consider when an action for reformation based upon mutual mistake accrues and what limitation period applies.[1]

█ Regarding accrual, an action for reformation grounded on mutual mistake does not begin to run until the assertion of an adverse claim against the party seeking

---

[1]Generally, reformation is available only when the parties, having reached an agreement, fail to express it correctly in the writing. RESTATEMENT (SECOND) OF CONTRACTS § 155, cmt. a. But neither party challenges the remedy of reformation. Thus, we assume that the Brownings seek to prove that the parties agreed to a sale price of $3,300 per acre and misstated the price in the contract because of the mistake as to acreage. Our analysis might be different if the Brownings were seeking avoidance, alleging that they were induced to enter into the agreement because of the mistake and that they would not have entered into this contract but for the mistake.

reformation. *State ex rel. Pierce County v. King Co.*, 29 Wn.2d 37, 44, 185 P.2d 134 (1947). Under this rule, the Brownings' cause of action accrued in April 1993 when the Howertons wrote that they felt the property was worth the contract price despite the confusion regarding acreage.

Regarding the applicable limitation period, RCW 4.16.040 provides in relevant part:

> The following actions shall be commenced within six years:
>
> (1) An action upon a contract in writing, or liability express or implied arising out of a written agreement.

A three-year limitation period applies to oral contracts. RCW 4.16.080(3). The shorter limitation period for oral contracts recognizes the undesirability of relying on parol evidence, which frequently tends to become less reliable with the passage of time. 54 C.J.S. *Limitations of Actions* § 64, at 98 (1987); *Matherly v. Hanson*, 359 N.W.2d 450, 457 (Iowa 1984).

■ For purposes of the six-year statute of limitations, a written agreement must contain all the essential elements of the contract (the subject matter, parties, terms and conditions, and price or consideration). *Barnes v. McLendon*, 128 Wn.2d 563, 570, 910 P.2d 469 (1996); *Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 298, 890 P.2d 480 (1995) (citing *Family Med. Bldg., Inc. v. Department of Soc. & Health Servs.*, 104 Wn.2d 105, 108, 702 P.2d 459 (1985)); *Cahn v. Foster & Marshall, Inc.*, 33 Wn. App. 838, 840, 658 P.2d 42 (1983). If resort to parol evidence is necessary to establish any material element, the contract is partly oral and the three-year statute of limitations applies. *Barnes*, 128 Wn.2d at 570; *Cahn*, 33 Wn. App. at 841. But a written contract need not expressly address terms normally regarded as necessary elements if those terms are implicit in the writing. *Kloss*, 77 Wn. App. at 299.

Generally, parol evidence is not admissible to show intent contrary to the provisions of a written contract. But it is admissible to show mutual mistake. *In re Marriage of*

*Schweitzer*, 132 Wn.2d 318, 327-28, 937 P.2d 1062 (1997) (citing *Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990)). Where parol evidence shows that both parties are mistaken about a basic assumption underlying a written agreement, the contract is voidable and the applicability of the six-year limitation period is unaffected. *See Schweitzer*, 132 Wn.2d at 328; RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981).

In the present case, the Brownings did not seek to rescind the real estate contract; rather, they asked the court to reform the price, a material term. They produced extrinsic evidence of the error in calculating the acreage and Mr. Browning's declaration explaining that he based the price on $3,300 per acre times 18 acres.

■ Such parol evidence is properly admissible to prove mistake as grounds for rescission. *Schweitzer*, 132 Wn.2d at 327-28. But the need for such evidence to establish a different price makes this case analogous, for statute of limitations purposes, to an action brought to enforce a partly oral contract. *See Barnes*, 128 Wn.2d at 570; *Cahn*, 33 Wn. App. at 841. Because parol evidence becomes less reliable with the passage of time, where a party seeks to use extrinsic evidence to establish a material term, the shorter three-year statute of limitations applies.

We note that if the parties had incorporated their method of calculating the price into the contract so that the court could determine the correct price without the benefit of extrinsic evidence, our conclusion might be different. But here, there is no implicit understanding as to the price per acre evident in the contract. *See Kloss*, 77 Wn. App. at 299. And the contract contains an integration clause stating that "[t]his contract contains the entire agreement of the parties hereto and . . . supersedes all of their previous understandings and agreements." Thus, the trial court properly applied the three-year statute of limitations.

## B. Fraud

A three-year statute of limitations also applies to actions

grounded in fraud. RCW 4.16.080(4). The Brownings contend that if their cause of action is grounded in fraud, the three-year statute of limitations did not begin to run until 1996 when the Howertons' attorney took the position that the Howertons "had indeed committed a tort." This is because, up until 1996, the Brownings regarded the "confusion as to the price of the property to be a mistake." In their reply brief, the Brownings further contend that "no such damage has been pled or shown."

The Howertons contend that the fraud statute of limitations began to run in February 1993 when the Brownings received the tax statement showing the correct acreage figure and became aware of the Howertons' innocent misrepresentation. We agree.

■ ■ As a general principle, a statutory limitation period commences and a cause of action accrues when a party has the right to seek relief in the courts. *First Md. Leasecorp. v. Rothstein*, 72 Wn. App. 278, 282, 864 P.2d 17 (1993). More specifically, the statutory period for a damage action based on common-law fraud does not commence to run until the aggrieved party discovers, or should have discovered, the fact of fraud by due diligence and sustains some actual damage as a result therefrom. *Id.* at 283.

Here, the Brownings had a right to seek relief as soon as they received the corrected tax statement in February 1993 and realized that they were obligated on a contract with an incorrect price. Thus, their action for fraud was time-barred by the time they filed suit in October 1996.

Given our conclusion that the Brownings' claims are time-barred, we need not discuss the merits of their motion for summary judgment.

Affirmed.

BRIDGEWATER, A.C.J., and ARMSTRONG, J., concur.