[No. 18576-1-III. Division Three. May 23, 2000.]

SANFORD LEHRER, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL., *Respondents*.

510

*Donald C. Brockett* and *Stephen R. Matthews* (of *Phillabaum, Ledlin, Matthews & Gaffney-Brown*), for appellant.

*O. M. Palachuck*, for respondents.

BROWN, A.C.J. — Sanford Lehrer, a psychiatrist at Eastern State Hospital (ESH), and ESH signed a document that purported to stipulate, settle, and release each other regarding an employment dispute. Dr. Lehrer later sued the State of Washington, Department of Social and Health Services, and ESH (collectively referred to as DSHS) alleging both breach of contract and rescission. After an adverse summary judgment, Dr. Lehrer appealed, rearguing violation of public policy, mutual mistake or ambiguity, and rescission. We affirm.

## FACTS

In April 1991, ESH received complaints against Dr. Lehrer resulting in the placement of three Personal Conduct Reports (PCR) in his personnel file. During May 1991, Thomas M. Fritz, ESH's superintendent, sent notification of the complaints to the Medical Disciplinary Board (Board). On August 27, 1991, Mr. Fritz, on behalf of ESH, and Dr. Lehrer signed a Stipulation of Resignation, Settlement and Release. Dr. Lehrer agreed to resign effective September 30, 1991, based on personal reasons and not apply to, or work for, ESH or Western State Hospital (WSH) "in any capacity." Mr. Fritz handwrote into the document the following language in consultation with Dr. Lehrer and his representatives: "PCRs will be removed from the file and notification will be made to the licensing board."

Immediately, Dr. Lehrer tendered his letter of resignation and Mr. Fritz removed the PCRs from Dr. Lehrer's file and sent a letter to the Board, stating:

> This is to inform you that all personnel actions against Sanford Lehrer, M.D., have been retracted by me. Dr. Lehrer has resigned from Eastern State Hospital effective September 30, 1991.

Nevertheless, the Board continued to investigate the complaints. Prior to his final day of employment, Dr. Lehrer sent Mr. Fritz a letter, requesting that Mr. Fritz compel the Board to terminate its investigation by retracting the original letter Mr. Fritz sent on May 31, 1991. Mr. Fritz believed he did not have that authority. Eventually, Dr. Lehrer filed a complaint against the State, DSHS, and ESH, alleging breach of contract, mutual mistake, violation of public policy and unlawful retaliation. DSHS received summary judgment dismissal of all claims. Dr. Lehrer unsuccessfully sought reconsideration, then appealed.

## ANALYSIS

The issue is whether the trial court erred when dismissing Dr. Lehrer's complaint by summary judgment and concluding an unambiguous, binding contract existed between the parties that was fully performed and neither against public policy as an unconstitutional restraint of trade nor the product of mutual mistake.

■ We review a summary judgment de novo, engaging in the same inquiry as the trial court. *Enterprise Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551, 988 P.2d 961 (1999). We consider all facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. *Id*. Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c); *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

■ A contract is enforceable if supported by consideration. *King v. Riveland*, 125 Wn.2d 500, 505, 886 P.2d 160 (1994). "Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." *Id*. (citing *Huberdeau v. Desmarais*, 79 Wn.2d 432, 439, 486 P.2d 1074 (1971); *Guenther v. Fariss*, 66 Wn. App. 691, 696, 833 P.2d 417 (1992)). "Before an act or promise can constitute consideration, it must be bargained for and given in exchange for

the promise." *King*, 125 Wn.2d at 505 (citing *Ward v. Richards & Rossano, Inc.*, 51 Wn. App. 423, 432, 754 P.2d 120 (1988); *Williams Fruit Co. v. Hanover Ins. Co.*, 3 Wn. App. 276, 281, 474 P.2d 577 (1970)).

Here, DSHS bargained with Dr. Lehrer for his employment termination from ESH, settlement of claims, and a release in exchange for removing PCRs from his personnel file, notifying the Board, telling future prospective employers that Dr. Lehrer resigned for personal reasons. In return, Dr. Lehrer agreed to resign and not to apply or work for ESH or WSH in any capacity. This is an exchange of promises, normally sufficient consideration. However, even contracts supported by consideration are unenforceable if against public policy. Here, Dr. Lehrer uniquely argues the agreement not to seek work with ESH and WSH violates public policy because it constitutes an unlawful restraint on trade. We could find no Washington case directly on point.

Resort to principles derived in employment restrictive covenant cases is helpful. For example, are the restrictions here reasonably necessary to protect DSHS's interests while at the same time minimally restricting Dr. Lehrer's liberty to engage in his profession without depriving the public of the type of service he has to offer? *See Perry v. Moran*, 109 Wn.2d 691, 698, 748 P.2d 224 (1987). Assuming, without deciding, the provision touches upon an unconstitutional restraint, the following three-part reasonableness test is a guide:

> (1) Whether restraint is necessary for the protection of the business or goodwill of the employer, (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant.

*Id.* at 698 (quoting *Knight, Vale & Gregory v. McDaniel*, 37 Wn. App. 366, 369, 680 P.2d 448 (1984)).

First, complaints were filed against Dr. Lehrer based

upon alleged verbal abuse. It is reasonable for DSHS to protect itself and its patients against future incidents. Second, Dr. Lehrer was merely prohibited from applying or working at two state institutions. He was free to practice his profession at any number of other facilities or to go into private practice without geographical or time restrictions. Third, no evidence exists in our record that other psychiatrists were unavailable to serve in these two public institutions. In this context, the loss of Dr. Lehrer's service did not injure the public. We conclude the clause restricting Dr. Lehrer from applying or working at ESH or WSH is reasonable. Given the unique circumstances of this case, the nature of the complaints against Dr. Lehrer and the wide range of other employment opportunities immediately open to Dr. Lehrer, the foreclosure against working at the two institutions is not fatal. Accordingly, we hold the provision is not against public policy and, thus, enforceable.

▮▮▮ Dr. Lehrer next alleges the contract is unenforceable based on mutual mistake. "A mutual mistake occurs 'when the parties, although sharing an identical intent when they formed a written document, did not express that intent in the document.'" *Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wn.2d 824, 832, 991 P.2d 1126 (2000) (quoting *Halbert v. Forney*, 88 Wn. App. 669, 674, 945 P.2d 1137 (1997)). "In discerning the parties' intent, subsequent conduct of the contracting parties may be of aid, and the reasonableness of the parties' respective interpretations may also be a factor in interpreting a written contract." *Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222 (1990). Generally, parol evidence is not admissible to show intent contrary to the provisions of a written contract. *Browning v. Howerton*, 92 Wn. App. 644, 649, 966 P.2d 367 (1998). But parol evidence is admissible to show mutual mistake. *Id.* "The test for mutuality of mistake requires the mistaken fact be the underlying basis of the entire agreement and, when discovered, that the essence of the agreement is destroyed." *Seattle Prof'l Eng'g Employees Ass'n,*

139 Wn.2d at 832 (citing *Childers v. Alexander*, 18 Wn. App. 706, 709, 571 P.2d 591 (1977)).

■ Here, the parties related different intents when contracting. Dr. Lehrer indicated he intended a direct retraction of Mr. Fritz's letter to the Board and a statement that the previous submission was false. Yet, Dr. Lehrer acknowledges he read the added language and initialed it even though there was no mention of Mr. Fritz's letter. In turn, Mr. Fritz testified that his intent was he would remove the PCRs from Dr. Lehrer's personnel file and notify the Board. The added language clearly conveys this intent. We conclude the parties lacked the necessary identical intent to establish a mutual mistake.

Next, Dr. Lehrer refers us to parol evidence to interpret the notification clause. In Washington, the general rule is that parol or extrinsic evidence is not admissible for the purpose of adding to, modifying, contradicting, or varying the terms of a written contract, in the absence of fraud, accident, or mistake. *Lynott v. National Union Fire Ins. Co.*, 123 Wn.2d 678, 683, 871 P.2d 146 (1994). However, parol evidence is admissible to show the situation of the writing parties and the circumstances under which the instrument was executed in order to ascertain the intention of the parties and to properly construe the writing. *Id.* (citing *Olsen v. Nichols*, 86 Wash. 185, 187, 149 P. 668 (1915)). We distinguish between parol evidence relating to integration and parol evidence that relates to interpretation. *See Berg*, 115 Wn.2d at 670 (extrinsic evidence admissible to prove omitted but not inconsistent terms in partially integrated contract). The parol evidence rule relates to integration, not to contract interpretation. *Id.* A recent decision by the Washington Supreme Court made clear that, " '[i]t is the duty of the court to declare the meaning of what is written, and not what was intended to be written.' " *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 571, 919 P.2d 594 (1996) (quoting *Berg*, 115 Wn.2d at 669).

■ If the language is clear and unambiguous, the court must enforce the contract as written; it may not modify the contract or create ambiguity where none exists. *McDonald*

*v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992). However, if the clause is ambiguous, extrinsic evidence of the intent of the parties may be relied upon to resolve the ambiguity. *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 374, 917 P.2d 116 (1996).

 Here, the trial court found the added language clear and unambiguous; Mr. Fritz was to remove the PCRs and notify the Board. The document indicates it was a final integration of their agreement. Integration is generally a question of fact. *Emrich v. Connell*, 105 Wn.2d 551, 556, 716 P.2d 863 (1986). Yet, if reasonable minds could reach but one conclusion from the evidence, a question of fact may be determined as a matter of law. *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 353, 779 P.2d 697 (1989).

In sum, parol evidence is not admissible to interpret the clause concerning notification because the parties' contract was integrated and the language was clear and unambiguous. Courts are not in a position to rewrite a clear and unambiguous contract. *Berg*, 115 Wn.2d at 669. Accordingly, we conclude the parties entered into a valid and enforceable contract.

 Having rejected Dr. Lehrer's alternative that the contract is unenforceable, we turn to his claim of improper grant of summary judgment on the issue of breach. Generally, a plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage. *Northwest Indep. Forest Mfrs. v. Department of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). The essence of Dr. Lehrer's argument is that DSHS breached the contract by not notifying the Board of the falsity of the previously reported PCRs. The contract specifically stated, "PCRs will be removed from the file and notification will be made to the licensing board." On the same day that the parties entered into the contract, Mr. Fritz removed the PCRs from Dr. Lehrer's file and sent the following letter to the Board:

This is to inform you that all personnel actions against Sanford

Lehrer, M.D., have been retracted by me. Dr. Lehrer has resigned from Eastern State Hospital effective September 30, 1991.

Comparing Mr. Fritz's actions to the contract language, reasonable minds could reach but one conclusion: DSHS satisfied its contractual duty. Having reached this conclusion, we need not discuss whether Dr. Lehrer was damaged by this agreement and do not discuss his request for attorney fees for the alleged breach.

## CONCLUSION

We hold the trial court did not err when granting summary judgment to DSHS and dismissing Dr. Lehrer's complaint because the contract between the parties was unambiguous, binding, not against public policy, and not the product of mutual mistake. Reasonable minds could reach but one conclusion, that the contract was fully performed without breach by withdrawing the offending complaints from Dr. Lehrer's personnel file and providing notification to the Medical Disciplinary Board of the retraction.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.

Review denied at 142 Wn.2d 1014 (2000).