[No. 19581-3-III. Division Three. July 12, 2001.]

JAMES SMITH, *Appellant*, v. SKONE & CONNORS PRODUCE, INC., *Respondent*.

*John G. Schultz* and *George E. Telquist* (of *Leavy, Schultz, Davis & Fearing, P.S.*), for appellant.

*Brian H. Miller* and *Christopher F. Ries* (of *Dano, Miller, Ries*), for respondent.

SCHULTHEIS, J. — Commission merchants must post an itemized list of their charges and may not vary those charges except by written contract with individual consignors. RCW 20.01.080. James Smith, a potato farmer, had a verbal agreement with Skone & Connors Produce, Inc., a commission merchant that cleaned, packed, and sold Mr. Smith's potatoes. After Mr. Smith's 1995 crop had been harvested, Skone & Connors sent him a statement with

packing charges substantially higher than the charges posted in 1988 pursuant to the statute. Mr. Smith sued for the overpayment and for other discrepancies in his account. After a bench trial, the court granted judgment for Skone & Connors on the packing charge issue.

On appeal, Mr. Smith contends he is required to pay only the 1988 posted packing charge because that charge was not altered by written contract. Because we find that the parties executed a written contract, and additionally find that a violation of RCW 20.01.080 does not affect the validity of an express contract term, we affirm.

## FACTS

Skone & Connors (S&C) is a licensed commission merchant incorporated in 1972. Mr. Smith has been farming potatoes since 1983. In 1993, S&C packed and sold Mr. Smith's fresh market potatoes pursuant to a written agreement signed by Mr. Smith and his business partner. This agreement included the following description of "pack-out" charges:

> Skone & Connors will make every attempt to obtain the best possible price for your crop. We will furnish you an accounting of the potato pack-out within 24 hours after potatoes have been packed. The final settlement for the potatoes will be available 60 days after the last day of shipment. . . . We will charge $65.00 per ton scale weight for packing and marketing this crop.

Def.'s Ex. 1. In the fall of 1993, Mr. Smith (who no longer had a partner) decided to have S&C pack and sell his 1994 crop. The parties entered into a verbal agreement regarding acreage, harvest dates, and the packing charge of $65 per ton. A letter from S&C confirming this agreement was never signed by Mr. Smith. The 1994 crop was harvested and sold by S&C and Mr. Smith accepted the settlement, labeled "final payment," without objection. Report of Proceedings at 102-03.

In December 1994 or January 1995, Mr. Smith again

agreed to grow potatoes for S&C. The parties entered into an oral agreement similar to the ones they had made in 1993 and 1994. S&C asserts that it told Mr. Smith the packing charge for 1995 would have to be raised $5 per ton due to the increased price for corrugated boxes. Stephen Connors of S&C later testified that Mr. Smith accepted the new charge of $70 per ton. Mr. Smith contends he was not informed of the new packing charge until he received statements for the 1995 harvest in November 1995. Mr. Connors met with Mr. Smith in November 1995 and January 1996 to settle the account. The parties went over the records each time and Mr. Smith raised no objection to the charges, which included the clearly marked packing charge of $70 per ton. He accepted a settlement check in January 1996 and cashed it.

Mr. Smith contacted a lawyer in November 1995 because he noticed discrepancies in S&C's charges and in the percentages of culled potatoes from one day to another. His lawyer contacted the Department of Agriculture and discovered that S&C's packing charges had not been amended since they were posted with the State in 1988. The 1988 posted charges were much lower than S&C's current charges. Mr. Smith filed a complaint with the Department of Agriculture, which declined to pursue the matter. Then, in February 1996, he wrote a letter to S&C complaining of digging overcharges from 1994, inaccurate records of culled potatoes one day in 1994, and 1995 packing charges in excess of the posted 1988 charges. He warned that his settlement payment would have to be adjusted or he would take legal action.

Mr. Smith filed suit against S&C in December 1996. He claimed that the difference between the 1988 posted packing charge and the amount he paid for packing in 1995 was $87,985.65. He also claimed an overcharge for digging in 1994 and improper accounting. After hearing testimony, the trial court found that the agreement between S&C and Mr. Smith was a transaction in goods governed by Article 2, Title 62A RCW. Recognizing that RCW 20.01.080 prohibits

deviations from the commission merchant's posted charges except by written contract, the court found that S&C's detailed accounting and the settlement payment cashed by Mr. Smith constituted a written agreement for the purposes of RCW 62A.2-201(1), (2) and RCW 20.01.080. Accordingly, the trial court concluded that the posted packing charge had been properly changed by the 1995 agreement, and the court granted judgment for S&C on that issue. On the other issues, the court awarded Mr. Smith $5,479 for the digging overcharges and denied recovery for the improper accounting claim. Mr. Smith appeals only the decision regarding the 1995 packing charge.

## DISCUSSION

Mr. Smith agrees that he and S&C had an agreement for the digging, cleaning, packing, and selling of Mr. Smith's potatoes. He does not wish to invalidate that agreement or to challenge any of its terms other than the $70 packing fee. He raises two alternative arguments: (1) that S&C's 1995 packing fee violated the clear provisions of RCW 20.01.080 because the 1995 charge was a change from the 1988 posted charge and the 1995 charge was not contained in a written contract; and (2) the two-year prior course of dealing established a packing fee of $65.

I. Violation of statute. RCW 20.01.080 provides that when a commission merchant applies for a license, he or she must include an itemized listing of all charges to be rendered to a consignor. The commissions and charges on this list "shall not be changed or varied for the license period except by written contract between the consignor or his or her agent and the licensee" or by written notice to the agriculture department chairman. RCW 20.01.080. Any commission merchant that violates this provision has committed a civil infraction. RCW 20.01.460. Because the statute is clear and unambiguous, we assume the Legislature means exactly what it says and accept that a written contract is necessary for changes to the posted charges.

*Duke v. Boyd,* 133 Wn.2d 80, 87, 942 P.2d 351 (1997) (interpretation of an unambiguous contract). S&C failed to file any changes in its charges after the 1988 posting. Mr. Smith contends the 1995 packing charge, undisputedly a change from the 1988 packing charge, is not contained in a written contract and is therefore void, restricting S&C to the 1988 packing charge. S&C responds that the periodic statements on the account, which showed the sales proceeds, packing charges of $70 per gross ton, and commission dues, constituted a written contract satisfying RCW 20.01.080.

█ Central to these arguments is the meaning of the term "written contract." Both parties and the trial court assumed that Washington's version of the Uniform Commercial Code (UCC), Article 2, Title 62A RCW, applies to this agreement and looked to RCW 62A.2-201 for the necessary elements of a written contract. As the trial court stated in its conclusions of law: "The agreement to process and market potatoes is a transaction in goods and is governed by RCW 62A.2." Clerk's Papers (CP) at 136. But Article 2 of the UCC applies only to contracts for the sale of goods. RCW 62A.2-106(1). A "sale" is the passing of title from the seller to the buyer for a price. *Id.* An agreement by a commission merchant to harvest, clean, pack, and sell on commission the agricultural products of a farmer is not a sales agreement. The farmer does not sell the products to the commission merchant, but relies on the commission merchant's expertise in brokering those products. Theirs is an agreement to provide and accept a service. Consequently, the trial court's conclusion that the parties entered into a contract for the sale of goods is incorrect. *Cf. Tacoma Athletic Club, Inc. v. Indoor Comfort Sys.,* 79 Wn. App. 250, 255-59, 902 P.2d 175 (1995) (construction contracts involving services and transactions in goods are subject to the UCC only if the predominant aspect of the contracts is the sale of goods).

█ Although the UCC is not directly applicable to a consignor/commission merchant agreement, it can provide

guidance on the definition of a written contract. *See Badgett v. Sec. State Bank*, 116 Wn.2d 563, 572, 807 P.2d 356 (1991) (the UCC applied by analogy to contract action); *Olmsted v. Mulder*, 72 Wn. App. 169, 177, 863 P.2d 1355 (1993) (the UCC does not apply to the sale of real estate, yet it provides guidance on disclaimers of warranties). The UCC statute of frauds, RCW 62A.2-201, provides that a writing is sufficient to constitute an enforceable contract if it indicates a contract for the sale of goods and if it is signed by the party against whom enforcement is sought. RCW 62A.2-201(1). Between merchants, however, a signature may not be needed if a written confirmation of an oral contract is sent within a reasonable time and the party receiving it has reason to know of its contents. RCW 62A.2-201(2). In that case, if the receiver does not give written notice of objection within 10 days after the confirming writing is received, the writing constitutes an enforceable contract under the statute of frauds. RCW 62A.2-201(2).

For the purposes of the general statute of limitations for written contracts (RCW 4.16.040(1)), a written contract is required to contain all the essential elements of a contract, including the subject matter, the parties, the terms and conditions, and the price or consideration. *Barnes v. McLendon*, 128 Wn.2d 563, 570, 910 P.2d 469 (1996); *Browning v. Howerton*, 92 Wn. App. 644, 649, 966 P.2d 367 (1998). Under the common law, the contract need not be contained in one document, but may be comprised of several documents, including antecedent correspondence and prior written memorandums. *Boyd v. Davis*, 127 Wn.2d 256, 261, 897 P.2d 1239 (1995); *St. Paul & Tacoma Lumber Co. v. Fox*, 26 Wn.2d 109, 124, 173 P.2d 194 (1946).

The trial court found that S&C sent Mr. Smith detailed records of the packing and sales transactions, including the weights of the potatoes harvested and sold, the pack-out records, sales reports, and an accounting based on the "agreed price" of $70 per ton for packing. CP at 135. These findings are substantially supported by Mr. Conners's testimony and the account statements. *Landmark Dev., Inc. v.*

*City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999) (review of findings of fact). Mr. Smith received these statements at least by the November 1995 meeting with S&C. At the November 1995 and January 1996 meetings, Mr. Smith did not object to the $70 per ton packing charge. He accepted a check from S&C consistent with the accounting contained in the statements. The statements confirmed the oral agreement between the parties and contained the essential terms of the agreement, including amounts, prices, costs for processing and packing, and the commission.

Mr. Smith did not sign the statements nor any other document signifying final settlement, but neither did he object to the clearly final terms of the account. Because he and S&C qualify as merchants (defined by the UCC as persons who by their occupations hold themselves out as having knowledge or skills peculiar to the practices or goods involved in the transaction (RCW 62A.2-104)), their oral agreement was properly memorialized by the statements sent to Mr. Smith and accepted without a timely objection. The parties remained in contact throughout the harvest and packing season. Consequently, the statements were delivered to Mr. Smith at a reasonable time for the purposes of the merchant exception. RCW 62A.1-204(2). Analogizing to the UCC, the account statements may be regarded in toto as a written contract for the purposes of the commission merchant statute, RCW 20.01.080.

On the other hand, even if the trial court erred in concluding that the detailed account statements constituted a written contract properly deviating from the posted packing charges, the agreement of the parties would still be enforceable. Assuming the 1995 agreement, with its $70 per ton packing charge, violated RCW 20.01.080, that violation would not void any term of the contract.

Generally a contract that is contrary to the terms and policy of a statute is illegal and unenforceable. *Vedder v. Spellman*, 78 Wn.2d 834, 837, 480 P.2d 207 (1971); *Haberman v. Elledge*, 42 Wn. App. 744, 750, 713 P.2d 746

(1986). One modification of this rule provides a different standard for statutes that regulate business. If a contract violates a business statute or regulation, the contract is not void unless the act expressly provides for invalidation of conflicting contract provisions. *Ritter v. Shotwell*, 63 Wn.2d 601, 606, 388 P.2d 527 (1964); *Fleetham v. Schneekloth*, 52 Wn.2d 176, 180, 324 P.2d 429 (1958). Nothing in the commission merchant act declares that contractual modification of its provisions is void or against public policy. The act provides that violation of RCW 20.01.080 constitutes a civil infraction. RCW 20.01.460(3). When, as here, a statute imposes a penalty for violations of its requirements, the penalty is exclusive of any other. *Haberman*, 42 Wn. App. at 750 (citing *Stegall v. Kynaston*, 26 Wn. App. 731, 735, 613 P.2d 1214 (1980)). Consequently, the agreement between Mr. Smith and S&C is enforceable even if its terms violate RCW 20.01.080.

II. Prior course of dealing. Alternatively, Mr. Smith contends the parties established a $65 per ton packing charge in their two previous years of agreements. He argues this "course of dealing" controls because the parties did not reduce their 1995 agreement to writing.

As noted in *Badgett*, 116 Wn.2d at 572, the use of the parties' course of dealing to interpret contract provisions arises from the UCC and applies by analogy to other contracts. RCW 62A.1-205(1) defines course of dealing as a sequence of prior conduct between the parties that establishes a common basis for interpreting other conduct and expressions. However, when prior course of dealing conflicts with the express terms of an agreement, the express terms control. *Badgett*, 116 Wn.2d at 573. Mr. Smith and S&C had agreed to the $65 per ton packing charge for the 1993 and 1994 harvests. This "sequence" of two annual agreements might have constituted a course of dealing, but the term in the 1995 agreement to charge $70 per ton overrode the prior conduct. As discussed above, the trial court's finding that the parties agreed to the $70 packing charge is sufficiently supported by the testimony and documents in

the record. Course of dealing cannot supplant this express term. *Id.*

Affirmed.

BROWN, A.C.J., and KATO, J., concur.

Reconsideration denied August 20, 2001.

Review denied at 145 Wn.2d 1028 (2002).